**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA DEFURIO, MARGARET DENNIS, ANITA KORNOSKY, MARCIA MENZIES, JEENIE NICKOLLS, CAROLE SARBER, FLORENCE STAHURSKI, NANCY STANICH, DEBORAH SWIECH, KAREN WILDING, ADELE WINWOOD, BARBARA ZEHNDER, and J. DIANE NEWMAN,** | ) | |
| | ) | **CA No. 05-1227** |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **JURY TRIAL DEMANDED** |
| **ELIZABETH FORWARD SCHOOL DISTRICT,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

## I. Introduction

This is an action seeking damages for alleged employment discrimination. Plaintiffs are thirteen employees-teachers at Defendant Elizabeth Forward School District who claim Defendant violated the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1); Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-2(a)(1); and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 955 (2006). Specifically, Plaintiffs, all older females, allege that Defendant pays them at rates less than it pays its younger and/or male teachers for equal work in violation of the aforementioned statutes. Plaintiffs seek equitable relief, in the form of placement at pay levels equivalent with younger and/or male teachers, as well as compensatory damages,

punitive damages, attorneys' fees and costs.

Pending before this Court is Defendant's motion for summary judgment. Docket No. 48. In reviewing this motion, the Court has taken into consideration the recent United States Supreme Court decision, *Ledbetter v. Goodyear Tire & Rubber Co. Inc.*, 127 S.Ct. 2161, 2007 WL 1528298 (May 29, 2007), the parties' briefs addressing same, Docket No. 83; Docket No. 84, as well as Plaintiffs' argument that they are entitled to summary judgment because collateral estoppel applies to their ADEA, EPA and PHRA claims. After careful consideration and for the reasons that follow, this Court DENIES Defendant's motion. The Court also declines to accept Plaintiffs' argument on collateral estoppel.

## II. Factual Background

The Court has gleaned the following factual background from the parties' summary judgment filings, including their respective statements of facts.

Plaintiffs are all female teachers at Defendant Elizabeth Forward School District who, with the exception of Barbara Zehnder, were hired at varying times from 1993 through 2000. (Docket No. 50, at ¶¶ 4-16. Plaintiff Barbara Zehnder was hired in 2004. Id. at ¶ 15. Plaintiffs were above the age of 40 when they were hired and were all hired at Step 1 of the Defendant's salary scale. Docket No. 63, at ¶¶ 9, 11, 13, 15, 17, 19, 21, 23, 25, 27,29, 31, 33. Step 1 is the lowest step on Defendant's salary scale. Id. It was Defendant's practice to hire all new teachers at Step 1, unless there was a need for a teacher with a particular certification and/or experience. Docket No. 49, at 3. All teachers move up the salary scale at a rate of one step per year. Id.

Since 1992, Defendant has hired 181 teachers. Id. Of these 181 teachers, 38 were hired at a salary step higher than Step 1. Id. Plaintiffs claim that they were hired at Step 1, and are therefore

paid less than those 38 other teachers, because of their age and/or sex. Docket No. 63, at 7. Defendant refutes this claim, contending that all of the teachers hired at salary steps higher than Step 1 filled a need of the School District at their time of hire. Docket No. 49, at 3. Plaintiffs filed their EEOC charge in 2005. Id. at 6.

A previous employment discrimination lawsuit was filed in this District by three other older, female employees-teachers against Defendant, *Heller, et al. v. Elizabeth Forward School District*, Civil Action (CA) No. 04-0145. The *Heller* plaintiffs, who were also hired at Step 1, also claimed that Defendant discriminated against them based upon their age and sex in violation of the Equal Pay Act, the ADEA and the PHRA when it hired other male and/or younger teachers at higher salary steps. CA No. 04-0145, Complaint at Docket No. 1, at ¶¶ 12, 18, 24, 36, 39, 42. *Heller* was tried before a jury that returned separate verdicts in favor of all three plaintiffs on January 31, 2005. The *Heller* jury completed special verdict forms for each of the three plaintiffs and issued separate findings at to each plaintiff's claims. *See* Plaintiff Heller's Special Verdict Form, Plaintiff Marraccini's Special Verdict Form, and Plaintiff Natale's Special Verdict For, CA No. 04-0145, attached as an Appendix hereto.

With respect to their Equal Pay Act claims, the *Heller* jury found: (1) that the defendant failed to meet its burden of proof that it paid each plaintiff less than any of its male teachers for a legitimate reason other than sex; and (2) that the defendant's conduct in paying each of the three plaintiffs less than any of its male teachers because of their sex was "willful." *See* Heller Plaintiffs' Verdict Forms. With respect to the plaintiffs' ADEA and PHRA claims, the jury issued the following findings: (1) each plaintiff proved, by a preponderance of the evidence, that age played a role in the defendant's decision-making process and that it had a determinative effect on the

decision to hire significantly younger teachers at higher pay steps; and (2) defendant's conduct in paying each of the three plaintiffs less than its significantly younger teachers because of their ages was "willful." *Id.* The court entered final judgment on April 26, 2005.[1]

## III. Standard of Review

Summary judgment under Fed. R. Civ. P. 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

While the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' – that is, pointing out to the District Court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[1] The defendant appealed all of the District Court's orders, including the denial of summary judgment. After hearing oral argument, the Third Circuit affirmed the decision of the District Court on May 31, 2006. *See Heller v. Elizabeth Forward Sch. Dist.*, 182 Fed. Appx. 91 (3rd Cir. 2006).

*Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion, *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Celotex*, 477 U.S. at 325). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255 (1986); *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.); and *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the non-moving party).

**IV. <u>Discussion</u>**

Defendant has moved for summary judgment with respect to all four of Plaintiffs' claims. As to Plaintiffs' ADEA, Title VII and PHRA claims, Defendant contends that these claims should be dismissed because (1) they are untimely; and (2) Defendant has proffered a legitimate, non-discriminatory reason for hiring other teachers at steps higher than Step 1, and Plaintiffs cannot show that this reason is a pretext. Docket No. 49, at 5, 16, 19. With respect to Plaintiffs' EPA claims,

Defendant argues that these claims fail because the differentials in pay between Plaintiffs and the male comparators are based upon factors other than sex. Id. at 24. As discussed below, the record does not support Defendant's arguments.

Additionally, this Court will also discuss and ultimately reject Plaintiffs' argument that Defendant is collaterally estopped from raising the defenses it employed in the *Heller* case.

**A. Statute of Limitations**

Defendant argues that Plaintiffs' Title VII, PHRA and ADEA claims are time barred.[2] Under both Title VII and the ADEA, a plaintiff must file a complaint with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged discrimination or within 300 days of the alleged discrimination if the person has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice.[3] 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(2); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Courtney v. La Salle University*, 124 F.3d 499, 502 (3d Cir.1997). Here, Plaintiffs had to file with the EEOC within 300 days of the alleged discrimination. *Colgan v. Fisher Scientific Co.,* 935 F.2d 1407, 1414 (3d Cir. 1991) (a plaintiff in a deferral state, such as Pennsylvania, is entitled to the extended period of 300 days). There are, however, cases in which the plaintiff does not know she has been harmed or the discriminatory conduct is an ongoing, continuous violation. To accommodate these situations, the Supreme Court has recognized that the

---

[2]Defendant concedes that Plaintiff Barbara Zehnder's claims are not time barred.

[3]As the Courts have uniformly interpreted the PHRA consistent with Title VII, the following analysis and conclusions are equally applicable to Plaintiffs' claims under both Title VII and the PHRA. *See LaRose v. Philadelphia Newspapers, Inc.*, 21 F. Supp. 2d 492, 497 (E.D. Pa. 1998), *citing Clark v. Pennsylvania.,* 885 F.Supp. 694, 714 (E.D. Pa.1995); *Violanti v. Emery Worldwide A-CF Co.,* 847 F. Supp. 1251, 1257 (M.D. Pa. 1994).

filing of a timely charge is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 480-81 (3d Cir. 1997) (*citing West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995) (citations omitted)).

According to Defendant, the "alleged discrimination" occurred when Plaintiffs were hired by Defendant at Step 1 of the pay scale. Docket No. 49, at 6. Plaintiffs, with the exception of Barbara Zehnder, were hired between September 1992 and July 2000, but did not file their complaints with the EEOC until 2005. Defendant argues that, therefore, Plaintiffs' claims were filed beyond the 300 days requirement and should be dismissed. Id.

Plaintiffs respond that their claims are not untimely because: (1) each paycheck constitutes an act of discrimination that starts the statutory period again ; and (2) the discovery rule renders their claims timely. Docket No. 62, at 17, 22.

**1. Paychecks as discrete acts of discrimination.**

To counter Defendant's argument that their claims are time barred, Plaintiffs have asserted that each paycheck constitutes a new act of discrimination pursuant to *Bazemore v. Friday*, 478 U.S. 385 (1986); Docket No. 62. Unfortunately for Plaintiffs, the Supreme Court's recent decision in *Ledbetter v. Goodyear Tire and Rubber Company Inc.,* 127 S.Ct. 2162, 2173, 2007 WL 1528298 (May 29, 2007), clarifies that each paycheck will only constitute a new act of discrimination where an employer adopts and retains a facially discriminatory pay structure. The *Ledbetter* Court held that an employer who maintains such a discriminatory pay structure can be regarded as intending to discriminate with each paycheck as long as the structure is used. *Ledbetter,* 126 S.Ct. at 2173. Where the pay structure is not facially discriminatory and is neutrally applied, however, a new violation does not occur and a new charging period is not triggered when the employer issues a

paycheck. *Id.*

Although Plaintiffs have repeatedly alleged that they have been subjected to a discriminatory pay structure, the record simply does not support this allegation. To the contrary, the facts of record establish that Defendant employs one pay scale which applies to all of the teachers and all teachers move up the pay scale at a rate of one step per year. The critical employment action in this case is not the adoption or application of the pay scale but the Plaintiffs' step placements at their time of hire. Accordingly, this Court rejects Plaintiffs' argument that each paycheck constitutes a new violation.

**2. The federal discovery rule.**

"Typically in a federal question case, and in the absence of any contrary directive from Congress, courts employ the federal 'discovery rule' to determine when the federal claim accrues for limitations purposes." *Romero v. Allstate Corp.,* 404 F.3d 212, 222 (3d Cir. 2005) (citations omitted). Under this rule, a claim will accrue when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim. *Id.; see also Podobnik v. U.S. Postal Service,* 409 F.3d 584, 590 (3d Cir. 2005) (the discovery rule delays the initial running of the statute of limitations, but only until the plaintiff has discovered: (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct) (citations omitted). The discovery rule, although it often applies to situations involving bodily injury, may also apply in cases involving alleged employment discrimination. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1386 n.5 (3d Cir. 1994) (*citing Delaware State College v. Ricks,* 449 U.S. 250, 258 (1980) (holding that the statute of limitations began to run "at the time the [alleged discriminatory] tenure decision was made <u>and communicated</u> to Ricks")(emphasis added)) (*citing Ohemeng v.*

*Delaware State College,* 643 F. Supp. 1575, 1580 (D. Del. 1986) (applying discovery rule in Title VII setting)).[4]

The question of whether a plaintiff has exercised reasonable, due diligence to be informed of the circumstances of an alleged injury is a question of fact. *Haugh v. Allstate Ins. Co.*, 322 F.2d 227, 231 (3rd Cir. 2003) (in disputed cases the trier of fact determines the point when a party reasonably should have been aware that she suffered an injury). Therefore, plaintiffs "need only allege facts tending to show that they were unable to identify their claim through the exercise of reasonable diligence." *Brandow Chrysler Jeep Co. v. Datascan Technologies*, 2007 U.S. Dist. LEXIS 42728, *10 (E.D Pa. 2007); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (determination of what actions "a reasonable person" would take is better left to the trier of fact because a court should not make credibility determinations or weigh the evidence).

As Defendant recognizes in its brief and supplemental brief in support of its motion for summary judgment, "the important question is when did the Plaintiffs know or when should they have known of the existence of their claim." Docket No. 49, at 13; Docket No. 83, at 5. The record makes clear that material issues of fact exist as to when Plaintiffs knew or should have known of their alleged injuries. These facts include, but are not limited to, whether the congratulatory letter to Plaintiffs by the Superintendent, the School Board Meeting Minutes, and/or the Administrative Bulletins provided Plaintiffs with sufficient information to determine that they were paid at rates less than other younger and/or male teachers. Docket No. 49, at 13-14; Docket No. 62, at 22. For

---

[4]The Third Circuit's adoption of the discovery rule has not been affected by *Ledbetter v. Goodyear Tire & Rubber Co. Inc.*, 127 S.Ct. 2161, 2007 WL 1528298 (May 29, 2007), to date. The Supreme Court did not address the applicability of the federal discovery rule because it was not argued by the plaintiff that such a rule would change the outcome of the case. *Ledbetter*, 127 S.Ct. at 2177 n.10.

instance, with regard to the Administrative Bulletins, Defendant asserts that Plaintiffs have admitted to seeing Bulletins which include all Board actions taken at Board meetings as well as the names of the newly hired individuals, their positions, and step placements. Docket No. 49, at 13-14; Docket No. 83, at 7. Plaintiffs, however, point out that the Administrative Bulletins do not include the ages of the newly hired teachers or the reason those teachers were hired at their respective step placements. Docket No. 62, at 22, & Docket No. 84, at 10.

Additionally, the parties dispute whether Plaintiffs should have been aware of the alleged discrimination when the *Heller* plaintiffs filed their complaint with the EEOC in December 2002. Docket No. 49, at 15; Docket No. 83, at 9; Docket No. 62, at 23; Docket No. 84, at 11.[5] Plaintiffs contend that they did not learn of Defendant's reasons for hiring teachers at steps higher than Step 1 in the *Heller* case until after the verdicts came down. Docket No. 62, at 23; Docket No. 84, at 12. Accordingly, as material issues of fact exist as to when Plaintiffs knew or should have known of alleged discrimination through the exercise of reasonable due diligence, the Court rejects Defendant's argument that Plaintiffs' Title VII, ADEA and PHRA claims are untimely.

**B. Pretext**

The parties agree that the three step analysis set forth in the *McDonnell Douglas* line of cases applies to Plaintiffs' ADEA and PHRA claims. *Simpson,* 142 F.3d at 644 n.5 (*citing McDonnell*

---

[5]Defendant argues for the **first** time in its supplemental brief in support of its motion for summary judgment that the Plaintiffs should have been aware of their alleged injury as early as 2001, when, pursuant to the collective bargaining agreement between Defendant and Plaintiffs' union, the *Heller* plaintiffs initiated a grievance asserting an alleged discriminatory practice in relation to the School District's step placements. (Docket No. 83, at 5). Defendant, however, raises the *Heller* plaintiffs' grievance as evidence of untimeliness without any citation to the facts of record. Moreover, this Court has not been provided a copy of the collective bargaining agreement between the Defendant and the Plaintiffs' union. Furthermore, the Plaintiffs have not had the opportunity to respond to said argument. Therefore, this Court, for the purposes of Defendant's motion for summary judgment, will not consider Defendant's timeliness argument based upon the *Heller* plaintiffs' grievance.

*Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). First, the plaintiff must establish a prima facie case of discrimination. *Simpson*, 142 F.3d at 644 n.5 (*citing St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502, 506 (1993)). Second, "upon such a showing by the plaintiff, the burden shifts to the employer to produce evidence of a legitimate nondiscriminatory reason for the adverse decision." *Simpson*, 142 F.3d at 644 n.5 (*citing Hicks*, 509 U.S. at 506-07). Third, the plaintiff must then demonstrate that the employer's articulated reason was not the actual reason, but rather a pretext for discrimination. *Id.*

Here, Defendant does not contend that Plaintiffs cannot meet their burden of establishing a *prima facie* case. Rather, Defendant claims that Plaintiffs' ADEA and PHRA claims should be dismissed because it has presented a legitimate, non-discriminatory reason for hiring certain teachers at steps higher than Step 1 and there is no evidence of record to establish that this reason is pretextual. To the contrary, the record provides a reasonable fact finder with ample evidence to find Defendant's reason pretextual.

Defendant's legitimate, non-discriminatory reason for hiring certain teachers at steps higher than Step 1 is that those persons "filled a need the School District had at their time of hire." Docket No. 49, at 18. Defendant broadly and baldly asserts that this reason is "uncontradicted" and applies to all teachers other than those who received Mifflinburg/Penns Manor credit. Docket No. 49, at 17-18.[6] Conspicuously, Defendant fails to set forth which hiring decisions or to which teachers this legitimate, non-discriminatory reason applied or to identify the needs filled.

---

[6]As explained in Defendant's Brief in Support of their Motion for Summary Judgment, the Mifflinburg/Penns Manor decisions require that the School District give credit to teachers being hired to permanent positions with prior long-term substitute experience for 90 consecutive days within the School District. Docket No. 49, at 17-18.

More importantly, the testimony provided by various witnesses for the Defendant does not support its articulated reason as to why certain teachers were paid more than Plaintiffs. For instance, although Defendant broadly contends that younger and/or male teachers were hired at steps higher than Step 1 because of need, Defendant's Superintendent, J. Paul Mueller, did not offer that reason as an explanation for why comparators Dykstra, Yarosh, Stephens, Colaric and Chorba were hired at steps above Step 1. Docket No. 63, at ¶ 55. In fact, Superintendent Mueller could offer no explanation as to why those teachers were hired at steps above Step 1. Docket No. 63, at ¶ 59-62. Similarly, School Board Members Michael O'Rourke and Laurie MacDonald did not offer need as the reason why comparators Stock, Raffaele, Bellora and Foster were hired at steps higher than Step 1. Docket No. 63, at ¶ 48. School Board Member Bennett testified that she did not know why any of the aforementioned comparators were hired at steps above Step 1. Docket No. 63, at ¶ 48. School Board Member Steven Raczkowski offered no information as to why any teacher would have been hired at a step above Step 1. Docket No. 63, at ¶ 49-51. Based upon her testimony, School Board Member Poirier was not aware of need as a basis for hiring a teacher at a step higher than Step 1, but rather a pretext. Docket No. 63, at ¶ 48. Although School Board Member Hansen testified that she was aware that teachers could be hired at steps higher than Step1, if there was a need to have a certain position filled, she knew of no specific instances where teachers were hired above Step 1 because of need. Docket No. 63, at ¶ 48.

Given the Superintendent's and the School Board's consistent and repeated inability to cite the district's needs as the basis for hiring certain teachers at steps higher than Step 1 and viewing the evidence in the light most favorable to the Plaintiffs, a reasonable jury could conclude that need was not the reason for hiring certain teachers at steps higher than Step 1 but rather a pretext. *See*

*Fuentes*, 32 F.3d at 765 (an employee plaintiff can survive summary judgment if he submits evidence from which a factfinder could reasonably disbelieve the employer's articulated, legitimate reason); *see also Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 284 (3rd Cir. 2001) (holding that if a plaintiff demonstrates that the reasons given for the adverse employment action did not remain consistent, this may be viewed as evidence tending to show pretext). Defendant is, therefore, not entitled to summary judgment with respect to Plaintiffs' Title VII, ADEA and PHRA claims.

**C. Equal Pay Act Claim**

Unlike Plaintiffs' ADEA and Title VII claims, their Equal Pay Act claims do not follow the same three-step burden shifting framework of *McDonnell Douglas*; rather, they follow a two-step burden shifting analysis. *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). Plaintiffs must first establish a *prima facie* case by demonstrating that employees of the opposite sex were paid differently for performing "equal work" under similar working conditions. *Stanziale*, 200 F.3d at 107 (*citing E.E.O.C. v. Delaware Dept. of Health and Soc. Servs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989)). The burden of persuasion then shifts to Defendant to demonstrate the applicability of one of the following four affirmative defenses specified in the Act: (1) a bona fide seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. *Stanziale*, 200 F.3d at 107 n. 6.

Defendant does not dispute that Plaintiffs have established a prime facie case for their EPA claims. Rather, Defendant raises the affirmative defense that the differentials in pay between Plaintiffs and the male comparators are based on a bona fide use of factors other than sex. Docket No. 49, at 24. Defendant's factors other than sex are that the male comparators had "particular

certifications that were not as prevalent in the marketplace" or "filled a need that the School District had at the time." Docket No. 49, at 25. In order to prevail at the summary judgment stage, however, Defendant must prove that the differentials in pay were based upon these factors "so clearly that no rational jury could find to the contrary." *Id.* (*citing Delaware Dept. of Health*, 865 F.2d at 1414).

Despite this clear burden, Defendant asserts its decision-making factors that the male comparators had "particular certifications that were not as prevalent in the marketplace," or "filled a need that the School District had at the time," without citing to the record, without setting forth the certifications held by the male comparators, and without identifying the needs that the male comparators filled. *See* W.D. Pa. L.R. 56.1(B)(1); and Practice and Procedures of Judge Nora Barry Fischer, effective July 1, 2007, available at http://www.pawd.uscourts.gov. Given the lack of evidence proffered by Defendant, a rational jury could certainly find that the differentials in pay between Plaintiffs and the male comparators were not based upon these factors. Moreover, as previously discussed with regard to Plaintiffs' Title VII and ADEA claims, the testimony of Superintendent Mueller and various School Board members leaves some room for doubt as to whether the male comparators' certifications and/or Defendant's needs were the actual reasons the male comparators were paid more. For these reasons, Defendant is not entitled to summary judgment on Plaintiffs' EPA claims. *See Stanziale*, 200 F.3d at 107-08.

**D. Plaintiff's Collateral Estoppel Argument**

Finally, the Court will address Plaintiffs' argument that collateral estoppel applies to their ADEA and EPA claims because there was a final adjudication on the issue of whether Defendant willfully violated those statutes in *Heller v. Elizabeth Forward School District*, Civil Action No. 04-0145. As the parties recognize in their respective briefs, the legal term for collateral estoppel in this

context is "non-mutual offensive collateral estoppel." Non-mutual offensive collateral estoppel occurs whenever a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979).

The Supreme Court's *Parklane* case, which made non-mutual offensive collateral estoppel available to litigants, was a stockholders' class action suit wherein the plaintiff- stockholders alleged that the defendant corporation and its officers issued a materially false and misleading proxy statement in violation of securities laws. *Parklane*, 439 U.S. at 324-25. Before the case was tried, the SEC sued the same defendants in District Court also alleging that the defendants issued a materially false and misleading proxy statement. *Id.* The District Court, after a nonjury trial, entered a declaratory judgment for the SEC. *Id.* The plaintiff stockholders then moved for summary judgment asserting that defendants were collaterally estopped from relitigating the issues that had been resolved against them in the SEC case, namely whether the defendants issued a material false and misleading proxy statement. *Id.* at 325. The District Court denied the motion and the Second Circuit reversed. *Id.* The Supreme Court granted certiorari and affirmed the Second Circuit's decision, holding that because the factual issues had already been resolved in the SEC action, there was no further fact finding function for the jury to perform. *Parklane*, 439 U.S. at 336 (citations omitted). The Court, however, noted that the application of non-mutual offensive collateral estoppel presents a unique potential for unfairness and therefore accorded trial courts broad discretion:

> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier

> action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Id.* at 331.

Before assessing whether circumstances exist in this case that might justify reluctance to allow the offensive use of collateral estoppel, this Court must first assess whether collateral estoppel applies. Courts may apply collateral estoppel where the following conditions are met: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (*citing Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (*quoting Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995))). The court may also consider whether the party being precluded had a full and fair opportunity to litigate the issue in the prior action and whether the issue was determined by a final and valid judgment. *Jean Alexander*, 458 F.3d at 249 (*citing Sebrowski v. Pittsburgh Press Co.*, 188 F.3d 163, 169 (3d Cir. 1999); *AMTRAK v. Pa. PUC*, 288 F.3d 519, 525 (3d Cir. 2002)).

Collateral estoppel does not apply to this discrimination case because the issue(s) in this case and the *Heller* case are not identical. Here, Plaintiffs seek to estop Defendant from relitigating "whether Defendant willfully violated the ADEA and EPA by paying Plaintiffs less than other teachers because of their age and/or gender." Docket No. 62. This was not the issue decided in *Heller*. Rather, as this Court reads them, the *Heller* findings were plaintiff-specific. In fact, the *Heller* jury made specific findings that Defendant violated the ADEA and EPA as to each of the

three *Heller* plaintiffs, namely Polly Ann Heller, Darla Marraccini and Penny Natale. For instance, the *Heller* jury found that: Defendant failed to meet its burden of proof that it paid Plaintiff Heller less than any of its male teachers for a legitimate reason; Defendant's conduct in paying Plaintiff Heller less than any of its male teachers because of her sex was willful; Plaintiff Heller proved, by a preponderance of the evidence, that age played a role in Defendant's decision making process and that factor had a determinative effect on the decision to hire significantly younger teachers at higher pay steps. *See* Civil Action No. 04-0145, Order Dated 04/26/05, Docket No. 65, App. 16. Indeed, the jury made these findings as to each of the three *Heller* Plaintiffs. *Id.*

Here, Defendant seeks to defend against thirteen (13) Plaintiffs who claim they were paid less because of their sex and/or age. Accordingly, this Court, as the Court in *Heller*, must look at each plaintiff and her individual claim against the Defendant.

Additionally, this Court finds instructive that the two non-mutual offensive collateral estoppel cases cited by Plaintiffs in their brief (*See* Docket No. 62), *Parklane* and *Raytech*, discuss the relitigation of issues which relate to the defendants in those cases, not the plaintiffs. In *Parklane*, the defendants were collaterally estopped from relitigating whether they issued a materially false and misleading proxy statement. *Parklane*, 439 U.S. at 336. In *Raytech*, the corporate defendant was collaterally estopped from relitigating whether it was liable as a successor corporation. *Raytech*, 54 F.3d at 191. Because the issues in *Parklane* and *Raytech* involved facts only relating to the defendants, the change in the identity and circumstanaces of the plaintiffs from the first action to the subsequent action had no impact on the framing of the issue in the subsequent actions.

Here, however, the issue Plaintiffs seek to estop Defendant from relitigating involves unique

facts relating to each of the Plaintiffs. Plaintiffs' ages, gender, pay and the circumstances surrounding each of their hires are essential to their claims of discrimination, and as such, were not litigated in *Heller*. Consequently, the issues in this case and the *Heller* case are not identical. Unlike in *Parklane*, there remain fact-finding functions for a jury to perform.[7] For these reasons, this Court will not apply non-mutual offensive collateral estoppel.

## V. Conclusion

Accordingly, this 19th day of September, 2007, upon consideration of Defendant Elizabeth Forward School District's Motion For Summary Judgment, Docket No. 48), Plaintiffs' response thereto, and memoranda of law in support and in opposition thereto, Docket No. 60, IT IS HEREBY ORDERED that the Defendant's motion is **DENIED**. In addition, the Court rules that it will not apply non-mutual collateral estoppel to the facts of this case. An appropriate order follows.

Nora Barry Fischer
United States District Judge

cc: All ECF registered counsel

---

[7]It is noteworthy that U.S. Court for the Western District of Arkansas recently commented in its opinion refusing to apply non-mutual, offensive collateral estoppel in a race discrimination case that, "[t]he Court found no federal caselaw applying the doctrine under Title VII, 42 U.S.C. § 1981, or any racial discrimination case." *Williams v. Osmose Utilities Services, Inc.*, 2006 U.S. Dist. LEXIS 39068, at *9 (W.D. ARK (Texarkana Div.) June 12, 2006).